FILED
CLERK, U.S. DISTRICT COURT

JUL 27 2016

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

*MR. YONGDA HUANG HARRIS vs. UNITED STATES OF AMERICA*

No Fee

**SECTION 2255 HABEAS CORPUS APPEAL OF CONVICTION**

**1 COUNT OF 18 USC 1001**

GROUNDS AND CONCISE STATEMENT OF SUPPORTING FACTS

TO: THE HONORABLE CHRISTINA A. SNYDER

A) **INEFFECTIVE LEGAL ASSISTANCE**    2:16-cv-05606-CAS

  I.    **Mr. Harris received ineffective assistance of counsel due to his Counsel's concession of guilt on account of his own prejudice and non-application of law governing the offence.**

  II.    **Mr. Harris's counsel forced Mr. Harris to enter into Plea Bargain, *de hors* against Mr. Harris's own wish, will and volition.**

  III.    **Mr. Harris received ineffective assistance of counsel, due to failure of counsel's to engage, argue and provide any effective legal defense available to Mr. Harris in the facts and circumstances of the case and under the law governing the offence.**

  IV.    **Mr. Harris's counsel committed criminal acts of fraud and threats against himself and his family for their own financial benefit.**

From the very inception, Mr. Harris never received effective assistance of a Legal Counsel. The 1st attorney representing Mr. Yongda Harris, Mr. GARRET WEINREID was retained by Aihua Harris (mother of Mr. Yongda Harris) specifically to secure bail and remove Mr. Harris from a dangerous facility where he was exposed to possible rape and murder at the hands of other inmates or staff. Mr. Weinreid was also hired to do legal research and criminal defense of Mr. Harris's arrest at LAX by Detective Jin Chu and Ed Sun, however Mr. Weinreid, despite having been paid several thousand dollars by Aihua Harris failed to perform any work whatsoever, never acted for Mr. Harris Harris besides one visit to him at MDC-LA, and abandoned his client completely without any counsel assistance during his arrest. Mr. Weinreid had failed to meet him at the initial police station Mr. Harris was incarcerated in, did not take any phone calls from Mr. Harris, and only met Mr. Harris after his mother Aihua Harris had already fired him for nonperformance of duty. Mr. Weinreid specifically lied to Mr. Harris claiming he was a "federal defense attorney" when he was in fact a state defense attorney not licensed to practice in federal court. Mr. Weinreid had charged his mother the entirety of a retainer that was not billed for the hours he promised and failed to perform any work whatsoever that could justify the hours billed. Mr. Weinreid lied to Mr. Harris that he was still representing him when at the point in time he visited Mr. Harris at LA MDC, Mr. Weinreid was already terminated by Aihua Harris and had no authority or business to see Mr. Harris.

Next, Mr. Harris's mother retained one Mr. Steven A Seiden as counsel for Mr. Harris. Mr. Seiden interviewed Mr. Harris in Jail and received all the Confidential and Privileged Information from Mr. Harris, and thereafter breached the attorney client privilege by disclosing the confidential statements Mr. Harris made to Seiden to USA Melissa Mills and to the media causing severe prejudice to Mr. Harris. Seiden claimed to the media Mr. Harris was a "loner" and told AUSA Melissa Mills his client had "mental issues". This is false but it is apparent Seiden utilized his discussions with Mr. Harris for his own advertisement and free media exposure while attempting to steal money from Mr. Harris and his mother. Seiden failed to properly prepare or do any effective defense work and his performance at Mr. Harris's bail hearing is indicative of a lack of preparation and competence.  He failed to point out the illegality of Mr. Harris's detention and accepted the Government's charge without question. Mr. Harris was in fact illegally charged and Attorney Seiden failed to point out this glaring fact of law in court.

Throughout his incarceration, Mr. Harris was never offered a public defender to represent him despite his poverty and his mother was never told or understood her son's right to be represented by public defender.  Neither Mr. Harris or his mother Aihua Harris had any ability or knowledge on how to get representation from the Public Defender's office and were forced to hire private counsel at great cost.

Mr. Harris thereafter retained Counsel Michael Harris Rosenstein and Jerod Gunsberg to represent Mr. Harris in Post and Pre Trial hearing, however the counsels never gave any effective legal assistance or counseling to Mr. Harris.  Mr. Gunsberg and Mr. Rosenstein were already prejudged and premeditated about the guilt of Mr. Harris.  Mr. Gunsberg and Mr. Rosenstein conspired together to defraud Mr. Yongda Harris and his mother Aihua Harris of almost $100,000 in monies without any legitimate defense work or services.  Gunsberg and Rosenstein specifically lied to Mr. Harris on the following points:

1. Both Gunsberg and Rosenstein told Mr. Harris on multiple jail visits that he cannot "appeal the Magistrate (Paul Abrams) denial of your bail without new evidence".  This is false as Attorney Becky James and subsequent lawyers were shocked at this disclosure and told Mr. Harris that is legally false. Mr. Harris had a legal right to appeal based on the existing evidence alone to your honor to bail him out of prison while his trial was pending.  Mr. Harris had a nonviolent noncriminal history and the seriousness of the underlying charge was not of a violent, sexual, or severe danger to the community.  The fact his attorneys Gunsberg and Rosenstein lied to Mr. Harris on this point alone was a deliberate fraudulent act both to conspire to defraud Mr. Harris' family of money while holding Mrs. Aihua Harris' son Mr. Harris "hostage" in jail to pressure her for more money.

2. Jerod Gunsberg and Michael Rosenstein on multiple occasions threatened Mrs. Aihua Harris for money.  When Mrs. Harris first flew to LA to visit her

son, Mr. Gunsberg met her in the court and the first thing he said to her was a threat. Mr. Gunsberg threatened Mrs. Harris telling her she needed to pay him "another $20,000" and that if she refused Mr. Gunsberg "would walk away right now and leave your son in prison." Mrs. Harris had already paid a retainer of $20,000 to both Gunsberg and Rosenstein and neither of them produced any record or billing to explain what they did with the money. At this point Mr. Gunsberg and Mr. Rosenstein had been hired for only 1 week and failed to do any legal work, they did not show any effort in writing or otherwise to indicate what work if any they did. They only made meaningless "morale visits" to Mr. Harris in prison about 2 times to "cheer him up" without making any legal investigation, motions, or any kind of attorney work to help Mr. Harris.

3.  Mr. Gunsberg and Mr. Rosenstein breached attorney client confidentiality by disclosing to the prosecutor a fact known only by them and the defendant. Their client told them when he was detained he had been left his wallet with handcuff keys in them. Yet when the Government later released their discovery the handcuff keys were said to be seized by the government from Mr. Harris' luggage. This is flagrantly false and the only fact they could have obtained the keys is if Mr. Gunsberg and Mr. Rosenstein disclosed this fact to the government.

4.  Mr. Harris provided information to Mr. Gunsberg and Mr. Rosenstein that were not used by them in their criminal defense of Mr. Harris. On the contrary it is now revealed that Mr. Gunsberg disclosed the confidential information regarding internet use by Mr. Harris to the Prosecutor to assist in prosecuting and investigating Mr. Harris. Mr. Harris had committed no crime and nothing criminal was divulged but the confidentiality of attorney client security was violated by Attorney Gunsberg who told Melissa Mills the passwords and internet sites Mr. Harris provided Mr. Gunsberg who informed his client he would hire "a Chinese interpreter under attorney client confidentiality to review the website" for Mr. Harris' benefit to get him out of jail and his charges dismissed. The Attorney Gunsberg never provided any documentation he hired anyone to review the website information Mr. Harris provided his attorney and instead it is evident from the record Mr. Gunsberg provided the US Government with all his client's confidential discussions without his client's knowledge or consent. Nothing was confidential between attorney and client and the violation of trust committed by Gunsberg and Rosenstein against Mr. Harris is a serious violation of attorney client ethics and a violation of Mr. Harris' 5th Amendment right against self-incrimination and 6th amendment right for effective counsel.

5.  The Government AUSA Melissa Mills and all her associates failed to disclose exonerating evidence and witness interviews to Mr. Harris and his then attorneys Mr. Gunsberg and Mr. Rosenstein. Mr. Harris learned after his

sentencing that the Government had interviewed personal witnesses who knew Mr. Harris professionally and personally and had failed to disclose these interviews to Mr. Harris or his then attorneys. Neither Mr. Gunsberg or Mr. Rosenstein had made any attempt to interview the witnesses Mr. Harris had provided them and they never informed their client of the results of the Government's interrogations with the witnesses. Among the witness list includes: Yuan He, Alexander Tzatsos, Constance Phillips, Lenny Beach, Ronald Dunbar, and others who the Government refuse to divulge. This is a direct and serious violation of Defendant's due process rights under Brady v. Maryland, 373 U.S. 83 (Withholding of evidence violates due process "where the evidence is material either to guilt or to punishment."). This was a deliberate and intentional act as evidenced by the media statements made by Melissa Mills and other Government authorities falsely claiming Mr. Harris "intended or had raped, murdered, and killed school children" when they had evidence directly contradicting this lie.

6. AUSA Melissa Mills in the Discovery released to Defendant through his attorney Gunsberg wrote that DHS Homeland Security had conducted "investigations on Harris' conduct in the airplane when he traveled from Japan to Los Angeles." The Discovery report wrote that "Harris was asleep during the plane travel." No witness was identified or revealed to the Defendant or his counsel who testified to this. The Government never turned over the identity of this secret witness and the Court was not informed of this evidence either. This is a major early Brady violation providing evidence of Defendant's lack of danger and innocence, the fact that the Government refused to release a witness name for cross examination but used the witness' testimony in a discovery report investigation by Homeland Security is a violation of Due Process and Brady rights that should have been turned over to the Defense. The fact that Defendant's then attorneys Gunsberg and Rosenstein should have read this fact in discovery and failed to file any motions or actions with the Court regarding this is either due to extreme negligence or intentional fraud against the Defendant.

7. Mr. Harris was coerced and forced into an involuntary proffer session which his defense attorneys Gunsberg and Rosenstein had promised him he would be granted immediate bail and would "mostly likely not get charged". Mr. Gunsberg had promised Mr. Harris that he would be given bail from the prison where Mr. Harris had been living under a daily threat of death or sexual assault. As evidenced by this Court was informed by Mr. Harris of the extortion he was forced into by his cellmate. Mr. Harris had sought Mr. Gunsberg's advice on how to deal with his victimization. Mr. Gunsberg told Mr. Harris "to go ahead and pay him" without making any attempt to inform the prison authorities or make any motion with the Court to secure his client's physical safety. Mr. Harris was in fact physically assaulted and beaten by his

cellmate for the money shortly after Mr. Gunsberg gave this "advice" to Mr. Harris. Mr. Gunsberg and Mr. Rosenstein both by their inaction to inform law enforcement and the authorities committed criminal negligence and fraud just by this act of telling their client to be criminally victimized while in custody.

8. Mr. Gunsberg coerced Mr. Harris to surrender his right to a grand jury hearing and forcing Mr. Harris to waive his grand jury rights, which specifically violated Mr. Harris 5th Amendment Right. Costello v. United States 350 U.S. 359 (1956). Mr. Gunsberg coerced Mr. Harris to do so by assuring him he would "get bail" by doing this and that it would have been of no consequence. Had Mr. Harris not been forced into such an act he would have brought the burden of evidence onto the Government to prove there was enough evidence to charge Mr. Harris with a crime. The Government's case was deliberately allowed to avoid such scrutiny through Mr. Gunsberg's willful malpractice against his client for financial gain.

9. The Government under AUSA Melissa Mills deliberately withheld the results of their investigations in Japan. During the forced proffer session, Mr. Harris was coerced by his attorney Mr. Gunsberg to disclose his private life to the government under false promises of bail and physical safety out of prison. Mr. Harris told the Government of his school he worked at in Japan and the location of where it was. Mr. Harris has found out after his sentencing the Government had investigated the school and interviewed the people who worked with Mr. Harris including his former employer in Japan. The Government never disclosed the results of their interviews with Mr. Harris' employer and coworkers in Japan, their investigation, or any evidence they obtained from Mr. Harris' forced proffer to the Defense. Mr. Harris had never obtained any eyewitness statements, exonerating evidence or anything of the kind that the Government obtained from their very thorough investigation in Japan. The massive Brady violations here are overwhelming to Mr. Harris and had the Government disclosed the results of their evidence they gathered in Japan it would have made an overwhelming beyond reasonable doubt proof of Mr. Harris' innocence in all the false and defamatory claims of his "guilt" by the Government who kept accusing Mr. Harris of "rape, murder, and kidnap". Attorney Gunsberg had told Mr. Harris in October 2012 in the MDC prison that Melissa Mills had remarked to him that "this [Mr. Harris'] case is bizarre" and that "there is so little evidence [to charge him with a crime]." This was never elaborated on by Mr. Gunsberg and Mr. Gunsberg never explained why Mr. Harris had to continue to be locked up in prison when the prosecutor admitted to him there was "so little evidence" to convict his own client.

10. The Government had withheld a major Brady violation when they initially charged Mr. Harris with Transportation of a Hazardous Material. The Government for the entirety of the time they had arrested and held Mr. Harris in detention failed to disclose to his defense attorneys the fact the "smoke

bomb" in question was allowed in checked luggage under the TSA travel items list. Mr. Harris had actually saw this was allowed in the TSA list of checked luggage, he had his baggage searched by TSA when leaving the US from Boston to Los Angeles and from LAX to China via Korea and Japan. LAPD Detective Jin Chu at LAX on October 2, 2012 said the following words upon examining Mr. Harris'·luggage. Detective Chu at that time said "None of these items are illegal." When Mr. Harris asked Detective Chu if the smoke bomb was illegal to be carried in checked luggage Detective Chu responded "It's not illegal sir but after 9/11 carrying something like that is really really stupid." It is a fact that Jerod Gunsberg and Micahel Rosenstein made no effort to research the TSA prohibited items list or even mention to the Court this public fact that the smoke bomb in question was allowed in checked luggage and had been screened by TSA as permissible for Mr. Harris' checked luggage. It is also a fact the item in question was not a "bomb" but a smoke canister with a wick like a candle. It cannot be detonated and is harmless unless deliberately lit with an open flame.

11. Mr. Harris had also been brutally beaten by the US Marshal in detention without provocation when a male white US Marshal struck him in his testicles during a search in front of DHS agent Ann Walsh. Mr. Harris was incapacitated and in excruciating pain from the unprovoked assault and neither the US Marshals or DHS agent Walsh called for a doctor for Mr. Harris. Instead Mr. Harris was locked by chains and handcuffs to a metal table and denied medical attention and even water despite him begging the Marshals for water and doctor multiple times over 6 hours. This occurred on the 3rd day of Mr. Harris' detention before he was to appear before Magistrate Paul Abrams and severely traumatized Mr. Harris on top of his trauma and grief for the death of his father Preston Harris and the media carnage harassing him and his mother.

12. On the night in December 2012 when Mr. Harris had been informed by Gunsberg and Rosenstein of the "plea" he was never given any voluntary chance to say "no". Gunsberg and Rosenstein at this point had taken over $80,000 from Aihua Harris with no work to show for it. Instead Mr. Gunsberg had returned from a long vacation with Mexico that was spent with his client's money and both of these attorneys started screaming and threatening Mr. Harris to sign the deal or they would quit on the spot. Mr. Gunsberg in particular repeatedly over 5-6 times told Mr. Harris "Yongda I hope you will keep us as your lawyers if you refuse to sign this plea. We will need to charge your mother more money for trial but I hope you will hire us for trial." Throughout the encounter Gunsberg repeatedly told Mr. Harris that he will give the jury "a hell of a show" but it won't make a difference and he would be convicted anyway. The attorney Gunsberg never explained why Mr. harris would be convicted beyond a reasonable doubt and the only logical

explanation was that Gunsberg and Rosenstein intended to throw their client's case. The fact neither Gunsberg and Rosenstein informed Mr. Harris they cannot legally quit on the spot without the Court's permission instead threatening to quit and let Yongda Harris be "raped and murdered in prison" if he dared to reject the plea deal poisoned the entire "voluntary" nature of this agreement. Mr. Rosenstein admitted to lying to Mr. Harris that night telling him "we didn't know you then like we did now." Mr. Rosenstein was referring to Mr. Harris' question why Dr. Lavid's report did not convince the US Attorney's Office to grant him bail and drop the charge. Instead Mr. Rosenstein admitted to Mr. Harris that Dr. Lavid was hired to convince his defense attorneys he would not "attack Melissa Mills and the others at the proffer session." Rosenstein continued that Mr. Harris "was so horribly horribly naive!" and that both he and Gunsberg thought Mr. Harris was "an animal" that would act violently from what they saw of him in the media. Mr. Harris' own defense attorneys NEVER thought he was innocent and intentionally conspired to convict him with the Prosecutor from the very beginning they were hired. This is violation of the most basic and fundamental attorney ethic rules to defend their client and provide effective representation under the Law. When Mr. Harris' own defense attorneys acted as prosecutors or agents of the US Attorneys office this was both a conflict of interest and a violation of an innocent man's constitutional rights.

13. At the time in 2013 when Mr. Harris had terminated Mr. Gunsberg and Rosenstein he had no intention of keeping his guilty plea. At the time Mr. Harris' counsel William Cintolo told Your Honor "My client has no intention of withdrawing his plea." That was false. Mr. Cintolo was speaking against his client's will without any knowledge from Mr. Harris that Cintolo would have said these things to Your Honor.

14. Mr. Harris had every intention to withdraw his plea. Mr. Harris had health problems that caused him to develop shingles and heart palpitations when Your Honor sent Mr. Harris back into MDC prison revoking his bail in April 2013. He suffered extreme PTSD by both the re-incarceration and the sudden violent search of his mother's home that almost caused Ms. Harris to suffer a heart attack by SWAT/Homeland Security and had his family dog Sasha almost shot by the police. This was despite Mr. Cintolo's false assurance to Mr. Harris that he would be spared prison provided he allow the Government to search his mother's computer. On April 24, 2013 if Your Honor had continued to allow Mr. Harris to stay on bail, Mr. Harris was going to tell the Court to allow him to withdraw the plea under forced coercion and threats from Mr. Gunsberg and Mr. Rosenstein. By re-incarcerating him Mr. Harris was forced to keep his plea out of fear for his personal safety and terror from the trauma and psychological and physical torture he underwent.

15. The evidence since produced after his forced guilty plea should call for a new trial by itself. As "newly discovered evidence would 'afford reasonable grounds to question . . . the integrity of the verdict.'" United States v. Williams, 613 F.2d 573, 575 (5th Cir. 1980) (quoting S. Pacific Co. v. Francois, 411 F.2d 778, 780 (5th Cir. 1969)). Attorneys Lombard and Walker both told their client the ineffective nature of his prior defense with Attorney Lombard telling Mr. Harris "They [Gunsberg and Rosenstein] didn't know what they were doing. You never should have signed the proffer or did the plea deal or accepted any of their recommendations." This was after Attorney Matthew Lombard continued his representation of Mr. Harris after his initial Sentencing in May 2013.

All the time Counsel kept pushing Mr. Harris to enter into Plea Agreement, otherwise, threatened Mr. Harris that he would never be released from Jail. Counsel specially threatened Mr. Harris that he had no defense in the case, and irrespective of best show being put up at a trial, Mr. Harris had no hope for acquittal and the Jury would convict him for the charge indicted. Counsel would not listen or appreciate the factual narration Mr. Harris had regarding the charges indicted, which factual narration would have formed basis to secure a reasonable line of defense for Mr. Harris at the Trial to secure acquittal.

Mr. Harris specifically instructed his counsel, that he had no intention to lie or state any untruth facts on the Customs Declaration Form. The following aspects were completely neglected by the Counsels.

(i)     First of all, Customs Declaration Form never mentioned or gave warning that making a false statement in the form is illegal, hence Mr. Harris had no knowledge that anything stated on Customs Declaration Form, if proved to be false, untrue or not the completed disclosure, will be illegal.

(ii)    In Customs Declaration Form, in response to questions "Countries visited on this Trip prior to US Arrival" Mr. Harris stated he visited "China". Which statement is admittedly True and not False. Failure to mention "Japan" is merely an omission and not falsehood. That it is pertinent to note that the Mr. Harris was charged for making a "False Statement" and not for "Concealing of a Fact". That making a false statement and Concealing a fact are two different category of offence under 1001. Hence, in absence of any specific charge of concealing of a fact, mere omission to state a fact cannot be equated with making a false statement. United States v. Diogo - 320 F. 2d 898 - (2nd Circuit)

(iii)   Mr. Harris specially instructed his counsel that as regards the question "Countries visited on this Trip prior to US Arrival" he understood that he is required to state the country from where he came from on this "Flight Trip", and not which other countries he visited while he was out of US. Mr. Harris

specially further instructed his attorney that while being interrogated by the CBP Official, Mr. Harris specially disclosed the fact without hesitation that he has visited Japan for 14 days. Mr. Harris did not lie or state false fact to the CBP Official. Intention of Mr. Harris was never to lie or make a false statement, but due to lack of clarity about the question, Mr. Harris failed to state "Japan" in his list of countries visited, which was merely an unintentional omission.

(iv)    That considering the lack of clarity about the questions in CBP Form and subsequently specifically answering the facts, without any hesitation, upon specific questioning by CBP Officials, specifically establishes the unintentionally omission by Mr. Harris on the CBP Form, which do not amount to felony. 18 USC 1001.

(v)    Mr. Harris specially instructed his Counsel that as regards the question concerning valuation of goods, most of the goods were articles of Personal use, which were purchased by Mr. Harris while he was in United States, and they were not purchased abroad. Mr. Harris further instructed his Counsel that other goods that were purchased abroad, were not commercial merchandise and they were goods for personal use, whose value would be, if converted in to US $, be around $ 100. That Mr. Harris also instructed his Counsel that he had no intention of lying or making any false declaration, about valuation of goods possessed by him, and further making any such false declaration would have been of no substance or use to Mr. Harris, nor would such valuation, effect the working / functioning of the Federal Agencies.

Despite the aforesaid clear instructions given by Mr. Harris, the Counsel never acted thereupon, and instead of carving a strategic line of action to defend Mr. Harris, the Counsels conceded and prejudged the guilt of Mr. Harris, and only focused on getting Mr. Harris to agree to Plea Agreement.

While Mr. Harris was in Prison, Mr. Harris's Counsel made no strategic plans to get Mr. Harris released on bail. All the time Counsel, threatened Mr. Harris that he has no defense. While Mr. Harris was in Prison, there are email correspondences between Mr. Harris and his Counsel, through Jail facility, which established that Mr. Harris Counsel were pushing and threatening Mr. Harris to enter into Plea Agreement. Even during Prison Visit, Mr. Harris Counsel would threat him that he would not represent Mr. Harris and Mr. Harris would remain in Prison for another 10 years, if Mr. Harris would not agree to enter into Plea Agreement. It is prayed that email communication made between Mr. Harris and his counsel through Jail facility may kindly be *sub poena* from the Prison Authorities.

Mr. Harris's counsel failed and neglected to take any steps against persecutors misconduct to discredit and prejudice Mr. Harris image, credit and reputation in the media and public, by making prejudicial and one sided media statement, and turning

out a complete Media Trial, which severally prejudiced Mr. Harris Constitutional right to receive a fair trial.

Mr. Harris's Counsel did not want to go for Trial and make attempt to acquit Mr. Harris. Mr. Harris's Counsels were trying for shortcut to avoid trial. With the aforesaid facts, Mr. Harris may have avoided conviction of making false statements in violation of § 1001, had the case gone to Trial.

Thus the ineffective assistance of Counsel led Mr. Harris to enter into Plea Agreement resulting in to his conviction and sentencing, therefore, the conviction and sentence needs to be set aside. The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. See Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980).

That the aforesaid facts case satisfies both the criteria as laid by in Strickland v. Washington, 466 U.S. 668 that the performance of the Mr. Harris Counsel was below an objective standard of reasonableness and that Mr. Harris was actually prejudiced by conduct, performance, advise and *mali fide* of his Counsels.

## B) **INVOLUNTARY PLEA**

    **I.**    **Mr. Harris's Plea agreement was involuntary as Mr. Harris was forced and threatened by his Counsel to enter into Plea Agreement.**

    **II.**    **Mr. Harris's Plea agreement was involuntary as Mr. Harris entered the Plea Agreement under duress and out of mental trauma.**

    **III.**    **Mr. Harris's Plea agreement was involuntary as Mr. Harris was never advised that to constitute offence under 18 USC 1001, government was also required to prove that Yongda had the knowledge that his statement made on the custom declaration form, besides being false, was also unlawful.**

Mr. Harris was travelling from China to Boston, via Los Angelis, to attend his father's funereal, and he was already in shock and trauma for the death of his father. Mr. Harris has no criminal record and he has been a naïve and innocent citizen and all of a sudden, out of the blue, he was arrested at the Los Angeles Airport, and he was branded and treated like a "Terrorist", "Flight Risk", "Rapist", and "Murderer" by Authorities and Agents. Exaggerated and Self Serving Statements were made against Mr. Harris by prosecutors in Media so as to prejudice the public against Mr. Harris. Pictures of seized goods from the luggage of Mr. Harris was pictured in to Media in such a fashion so as to canvass and image that Mr. Harris has visited United States to wage war or with some specific criminal intend. That the prejudice to Mr. Harris is specifically established from the media clips, TV Interviews, and media report available on the internet and user comments made thereof.

Over and above, Mr. Harris's Counsel, without considering the defense and statement of Mr. Harris, conceded to the guilt of Mr. Harris and never came up with any strategic line of defense to attack prosecutors strategy and case, and rather created an aura of complete distress, trepidation and added to the mental trauma to which Mr. Harris was already passing through, by stating that if Mr. Harris would not enter into Plea Agreement, he would be convicted by the Jury, at any cost, and Mr. Harris would remain in Prison for long time. United States v. Gwiazdzinski, 141 F.3d 784, 790 (7th Cir. 1998) (quoting United States v. Barnes, 83 F.3d 934, 939 (7th Cir. 1996)).

The entire atmosphere created by the prosecutors, media and the Mr. Harris's own Counsel led Mr. Harris to a complete despair, and Mr. Harris had no choice but to accept and succumb to Plea Agreement. Mr. Harris did not agree to Plea Agreement, because he was guilty of any offence, but he agreed because he was left with no choice. That had Mr. Harris received effective legal assistance, and the Counsel would have aptly and ably assisted Mr. Harris then Mr. Harris would have never entered into Plea Agreement. Paters v. United States, 159 F.3d 1043, 1045-46 (7th Cir. 1998)

Moreover, while recording the Pre-Agreement, the District Court did not brought it to the notice of Mr. Harris, that to secure Mr. Harris's conviction at the trial, Prosecutor is also required to prove that Mr. Harris's was aware that besides his statement being false was also unlawful. Failure to bring such essential element of crime at the time of Plea Agreement, renders plea agreement involuntary.

Further Mr. Harris received ineffective legal assistance of his Counsel, because Counsel never apprised or brought to the knowledge of Mr. Harris that to secure conviction under 18 USC 1001, the prosecution was also required to prove that "Mr. Harris know that while making statement on the Custom Declaration From, his statement was not only false, but is also unlawful". Bryan v. United States, 524 U.S. 184, 193 (1998).

Also, the United States did not establish or produce any evidence to establish "materiality" aspect, nor such "materiality" aspect was ever put to Mr. Harris during Plea Agreement that the answer put up by Mr. Harris in the Custom Declaration Form was calculated with a view to influence the actions of government agencies or that such answer of Mr. Harris did influence or would have otherwise influenced the action of government agencies. United States v. Goldfine, 538 F. 2d 815, 820-821 (9th Cir. 1976).

Therefore, the Plea Agreement entered by Mr. Harris was involuntary based on the aforesaid facts.

## C) <u>PROSECUTORIAL MISCONDUCT</u>

**I.**    **Government engaged into prosecutorial misconduct by introducing prejudicial evidence, which had no nexus to the offence charged, so as to prejudice and emotionally distress the mind of the Judge.**

**II.**    **Prosecutorial misconduct of introducing prejudicial evidence resulted into depriving Mr. Harris of fair trial.**

Mr. Harris was indicted for the charge of violation of 18 USC 1001 for making false statement on Custom Declaration form at LAX Airport. Prosecution was required to introduce only that much evidence before the Judge which was required to prove the charges of 1001. However, prosecution not only introduced other extraneous evidence but represented it before the Judge and Media in an exaggerated and verbose manner that specifically prejudiced the mind of judge, public at large and also the proposed jurors, had the case gone to the trial, against Mr. Harris.

The prosecutors made open statement in the Media that Mr. Harris had luggage with objects to "rape, kidnapping, and murder of school girls". Mr. Harris was projected as a dangerous and demonized person and a clear threat to the society, though the charge was only under Section 1001. An innocent young person, with no criminal history or background, was all of a sudden demonized in front of the world, without even having him an opportunity to rebut the same. Prosecutor specially created a media trial to the complete prejudice of Mr. Harris.

Mr. Harris was not charge or indicted for having possession of any recovered articles, yet, prosecutor again and again brought such articles possessed by Mr. Harris in service, which were not at all material for trying offence under Section 1001. That though the Judge was considering offence under Section 1001, but virtually and at the back of his mind, he was trying and holding Mr. Harris for possession of the objects recovered from the Mr. Harris's luggage, which according to the Prosecutor were objects to "rape, kidnapping, and murder of school girls", although for which there was no evidence.

Because the aforementioned extraneous material was so much highlighted by Prosecutor, and given media attention, that even the counsels of Mr. Harris were only interested in seeing the case through a successful prosecution, instead of contesting the same case on its merits and even making the most rudimentary defense for their client, which also led to ineffective legal assistance to Mr. Harris.

That prosecutor had created such an aura for Mr. Harris, were everyone looked upon Mr. Harris as an "Terrorist", "Rapist", "Murderer" and it had become virtually impossible for Mr. Harris to receive a fair trial at all. Prosecutors created the image of Mr. Harris as a hardcore criminal or criminal minded manic (despite the lack of any criminal history or record for Mr. Harris), in minds of the public and the Court, which specially created a psychological terror effect on the public at large, including that of Your Honor to release Mr. Harris and/or exercise any mercy or discretion or objective appreciation of the facts in favor of Mr. Harris.

That there was so much of prejudice created by the Prosecutor for Mr. Harris by again and again projecting such material recovered from the luggage of Mr. Harris, in such an absurd manner, that it was virtually impossible for Mr. Harris to secure a fair trial, acquittal and much less even bail. The facts that such material did prejudice the mind of the Court is apparent from the nature of probation sentence and conditions imposed by Your Honor on Mr. Harris especially in regards to the "Sex Offender" condition put in Probation. This was despite the fact no Sex Offense occurred and the case law and basic common sense refuted the argument from the Government that Mr. Harris was a sex offender. In addition during Sentencing the Prosecutor Mills claimed the Government considered "anime and manga to be child pornography" which is unheard of as millions of Americans read anime and manga and by the Prosecutor's definition the Government should be arresting millions of other Americans for "child pornography" in reading comics and cartoons which was supposed to be protected 1st Amendment speech.

Thus, prosecutors committed a serious misconduct by introducing such extraneous material, which caused severe prejudice to Mr. Harris and clearly affected his constitutional right to fair and impartial trial. Extraneous evidence cannot be used to prove impeachment on a collateral matter. United States v. Senn, 129 F.3d 886 (7th Cir. 1997)

That this is an extraordinary situation, where prosecutors played completely dirty, made a media trial, defamed and discredited Mr. Harris in public so as to create prejudice, fear and threat in the mind of public about the character of Mr. Harris, concealed significant evidences collected by the prosecutor, that would have proved innocence of Mr. Harris and let to drop the charges against Mr. Harris, or much less secured bail for Mr. Harris, also produced extraneous evidence and conspired with the counsels of Mr. Harris. That the present case has just been a case of publicity and fame for the prosecutors and attorneys of Mr. Harris, where all that the prosecutors wanted was to get the Mr. Harris convicted and make headlines and the attorneys of Mr. Harris, just wanted to extort money from Mr. Harris, and see the case through without making any efforts or entering into Trial and receive some clandestine perks from the prosecutors for having secured conviction for them. That it was all game of fame and glamour for both the side, by playing Mr. Harris as pawn, forgetting the innocence of a young man, whose life have been scared with this game of fame.

Thus there was a fundamental defect and total miscarriage of justice warranting this petition to be allowed. See Kelly v. United States, 29F.3d 1107, 1112 (7th Cir. 1994). The entire proceedings lacked fundamental fairness violating constitution rights of Mr. Harris. 489 U.S. at 311

## D) DISTRICT COURT'S SENTENCE IS UNCONSTITUTIONAL

I.   **The period of sentence of Supervised Probation of 5 years imposed on Mr. Harris Harris exceeds maximum prescribed under the USSG for the proved offense level.**

II.  **Conditions imposed by the District Court is unconstitutional, vague or overbroad.**

III. **District court's sentence is unconstitutional as while sentencing Younda, District Court took in to consideration extraneous evidence, which had no nexus to the offense charged.**

Mr. Harris was sentenced to the statutory maximum of five years probation, in accordance with the plea agreement, but at the time of his sentence, he had already served approximately five months in pretrial detention. The district court ran the five-year period of probation from the date of sentencing, without giving any credit for time served. The imposition of the five-year probationary sentence without credit for time served had the effect of imposing a sentence in excess of the statutory maximum sentence and was fundamentally unfair. Hicks v. Oklahoma, 447 U.S. 343

District Court sentenced Mr. Harris to [5] years of probation on supervised released, upon compliance to strict terms and conditions. USSG provided maximum sentence of [3] years, however, the facts and circumstances of the case provided no special factor for departure from the sentencing range.  The factors that were considered by the District Court for departure the general sentencing range, and to imposed statutory maximum, was based on consideration on extraneous factors, which has no bearing or resemblance to the offence charged. Additionally, the objects recovered from Mr. Harris's luggage, were legal. The material found in the laptop of Mr. Harris was absurdly projected by the Prosecutor and wrongly interpreted by the Court, so as draw an prejudicial inference against Mr. Harris.  District Court imposed the conditions based on wrong inferences and extraneous factors, and wrongfully departed from the sentencing range and thus rendered the sentence of Mr. Harris unconstitutional.

## E) <u>VIOLATION OF CONSTITUTIONAL RIGHT & LACK OF FUNDAMENTAL FAIRNESS</u>

The Court is faced with a powerful test of its impartiality and role of the defense of the US Constitution.  Throughout this entire criminal proceeding the Prosecutor keeps describing Mr. Harris as a "rapist, serial killer, murderer" or whatever other pejorative they can come up with without any criminal charge, conviction, or anything of substance or evidence they can produce to justify this. Instead the US Attorney's office has reduced itself to become essentially a tabloid or panic monger engaging in a modern day witch-hunt on an innocent human being who was denied the rights enjoyed by all American citizen through in the best light would be described as gross negligence by the government and in the worst case as a deliberate cover-up of illegal police and prosecutorial misconduct.  The detention of

Mr. Harris at the airport was illegal, the arrest of Mr. Harris for his initial charge was illegal, the seizure of his property was illegal, and the conspiracy his own attorneys engaged in with the US Attorney's office is illegal. The US Attorney's office is supposed to bring cases before the Court that is grounded in reality not fantasy. The failure of this office to follow basic ethical standards such as Brady disclosures and the use of false charges and extensive confinement of an innocent person grieving for the death of his father is abhorrent and should be condemned by any civilized human being. Duncan v. Louisiana, 391 U.S. 145, 149 n.14 (1968).

It is noteworthy the Prosecutor in Defendant's sentencing produced samples of pornography to the Court during sentencing. It is obvious the Prosecutor was attempting to make Your Honor express disgust of Mr. Harris' character despite the fact the 1st Amendment is supposed to protect such behavior. What the Prosecutor was doing is contrary to the rule of Judicial impartiality as AUSA Mills was attempting to sway Your Honor to be biased against Mr. Harris. Mr. Harris' then counsel Mr. Lombard had failed to make any objection to attempt to prevent such loss of objectivity which is another failure of counsel Defendant brings up. Whether that act and its combination of the rhetoric and media attention affected its decision is unknown but the Constitution is supposed to protect lawful use of its rights and make sure that suspects receives fundamental fairness in Criminal Prosecutions. The rights of the 1st Amendment Free Speech, the 5th Amendment due process, the 4thAmendment freedom from unreasonable search and seizure, and all the other rights enumerated should not be ignored or disregarded for convenience or other reasons.

Mr. Lombard also failed to make any objections to the PSR report in Court despite Mr. Harris strongly objecting to everything written by the Probation Officer who refused to interview Mr. Harris. The claim that there was a "distance issue" preventing the PSR officer from interviewing Mr. Harris is disingenuous as Mr. Harris could have been phone interviewed or interviewed by Boston Probation. The fact is the whole prosecution and investigation of Mr. Harris was of a hasty rushed nature that sought to conceal illegal misconduct by law enforcement authorities.

Mr. Harris has demonstrably proven he is not, was not, and never was a danger to society. He had legal items that many other Americans possess and the fact he was singled out instead of what even the media reported other people possessed as well is a travesty of justice. As Attorney Lombard had described to me Your Honor is "a very powerful woman" who I believe has a strong sense of justice and respect for the Law. The law may not always work out for the Government's favor and may seem inconvenient when putting people in prison but it is those very times when the Law forces the Government to prove its case that innocent people are not forced into prison for the benefit of the US Attorney's office. That is what Federal Judges are for I believe. (See The role of Federal Judges: their duty to enforce the constitutional rights of individuals when the other branches of government default). Your Honor is my last safeguard to protect that most precious and sacred of American laws, the right

to have rights guaranteed under the Constitution, the founding document of our great nation.

    To allow these horrific and egregious violations of the basic Constitutional rights including the right to effective counsel, the right to a fair trial, the right to see evidence and present evidence, and the right to free speech and protection from unreasonable search and seizure would destroy the very fabric of this Country. The errors committed in this case are so vital and strikes to the very root of fundamental fairness and the Constitutional ethos, which requires to be corrected by your Honor. Wiborg v. United States, 163 U.S. 632,

    I wish to leave Your Honor with a personal note. While I was incarcerated, separated from my family, unable to attend the funeral I was traveling to, and suffering daily terror and fear Your Honor can not imagine. I read a book by John Grisham called The Innocent Man based on a true story. In it detailed but a sample of horrific prosecutorial and police misconduct that is plaguing our nation. The only crime the title character had committed was being naive, simple minded, and eccentric to others. Such characteristics may seem unusual but they are not reason to make someone a criminal. Just when it looked like the Innocent Man would have been executed the US District Judge Frank Seay overturned his conviction. I will never what Judge Seay wrote in his decision it gave me my only hope to sustain myself in such a terrifying situation. Judge Seay wrote: "God help us, if ever in this great country we turn our heads while people who have not had fair trials are executed…" - Judge Frank Howell Seay.

    I was denied my fair trial Your Honor. I only ask for your enforcement of my Constitutional rights just as Judge Seay enforced the Constitution because he believed in it as a fellow American and human being.

I swear this is true under the Penalty of Perjury.

Mr. Yongda Harris                                           25. July · 2016

On this 25 in day of July 20 16, before me, the undersigned Notary Public, personally appeared _____ proved to me through satisfactory evidence of identification, to be the person whose name is signed on this document in my presence.

## Mr. Harris makes the following motions from the Court:

**Motion #1:** Discovery. The Court shall subpoena discovery from Attorneys Jerod Gunsberg, Michael Rosenstein, Garret Weinreid, Matthew Lombard, Steven A Seiden, William Cintolo, Melissa Mills, and Matthew Larsen. The Court shall also subpoena all of the aforementioned attorneys as witnesses to give evidence in a deposition for the 2255 Habeas hearing. The Court shall also subpoena Dr. Nathan Lavid and Dr. Craig Lareau and Dr. John Cusack for witness testimony to provide evidence in the habeas case.

**Motion #2:** Defendant files a FOIA request with Department of Homeland Security, TSA, Bureau of Prisons, FBI, LAPD, the US Attorney's office, the US Marshal's' office, US Probation, and the US Department of Justice. Defendant seeks all records from these and any other government agencies that were involved in Mr. Harris' case to turn over all FOIA information including, reports, testimony, email, phone records, and all other photographic, video, and written evidence.

**Motion #3:** Defendant requests the Court convene a hearing to decide on the Habeas 2255 Appeal. Defendant requests the Court expedite the proceeding if necessary.

**Motion #4:** Defendant asks for a Certificate of Appealability in the event the Court should rule against him.

**Motion #5:** Defendant requests the Court appoint Attorney Becky Walker James as his attorney to represent him for the Habeas appeal. Mrs. James has experience and familiarity with Mr. Harris' case which allows for a faster and more efficient judicial process in terms of time saved instead of a new attorney unfamiliar with Mr. Harris' case having to spend time playing catch up.

_____

Mr. Yongda Harris                                         25. July. 2016

On this 25Th July , 20 16
before me, the undersigned Notary Public, personally
appeared Yongda Hwang Harris
proved to me through satisfactory evidence of
identification, to be the person whose name is
signed on this document in my presence.

ELAINE FRANCIS
COMMISSION EXPIRES
NOVEMBER 2, 2020
NOTARY PUBLIC
COMMONWEALTH OF
MASSACHUSETTS

AO 243 (Rev. 01/15)                                                                                                       Page 1

# Motion to Vacate, Set Aside, or Correct a Sentence
## By a Person in Federal Custody

### (Motion Under 28 U.S.C. § 2255)

### Instructions

1.  To use this form, you must be a person who is serving a sentence under a judgment against you in a federal court. You are asking for relief from the conviction or the sentence. This form is your motion for relief.

2.  You must file the form in the United States district court that entered the judgment that you are challenging. If you want to challenge a federal judgment that imposed a sentence to be served in the future, you should file the motion in the federal court that entered that judgment.

3.  Make sure the form is typed or neatly written.

4.  You must tell the truth and sign the form. If you make a false statement of a material fact, you may be prosecuted for perjury.

5.  Answer all the questions. You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit a brief or arguments, you must submit them in a separate memorandum.

6.  If you cannot pay for the costs of this motion (such as costs for an attorney or transcripts), you may ask to proceed *in forma pauperis* (as a poor person). To do that, you must fill out the last page of this form. Also, you must submit a certificate signed by an officer at the institution where you are confined showing the amount of money that the institution is holding for you.

7.  In this motion, you may challenge the judgment entered by only one court. If you want to challenge a judgment entered by a different judge or division (either in the same district or in a different district), you must file a separate motion.

8.  When you have completed the form, send the original and _____ copies to the Clerk of the United States District Court at this address:

    **Clerk, United States District Court for**
    **Address**
    **City, State  Zip Code**

    If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

9.  **CAUTION: You must include in this motion all the grounds for relief from the conviction or sentence that you challenge. And you must state the facts that support each ground. If you fail to set forth all the grounds in this motion, you may be barred from presenting additional grounds at a later date.**

10. **CAPITAL CASES: If you are under a sentence of death, you are entitled to the assistance of counsel and should request the appointment of counsel.**

AO 243 (Rev. 01/15)                                                                                         Page 2

MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Central District of CA | |
|---|---|---|---|
| Name *(under which you were convicted):*<br>Yongda Huang Harris | | | Docket or Case No.: |
| Place of Confinement:<br>Los Angeles MDC | | Prisoner No.:<br>58047-112 | |
| UNITED STATES OF AMERICA<br><br>V. | | Movant *(include name under which convicted)*<br>Yongda Huang Harris | |

**MOTION**

1.  (a) Name and location of court which entered the judgment of conviction you are challenging:

     Central District of California

     (b) Criminal docket or case number (if you know): _____

2.  (a) Date of the judgment of conviction (if you know): _____

     (b) Date of sentencing: _____

3.  Length of sentence:  5 years probation _____

4.  Nature of crime (all counts):

     1 count 18 USC 1001

5.  (a) What was your plea?  (Check one)
     (1)  Not guilty ☐              (2)  Guilty ☑              (3)  Nolo contendere (no contest) ☐

     (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
     what did you plead guilty to and what did you plead not guilty to?

6.  If you went to trial, what kind of trial did you have?  (Check one)        Jury ☐        Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?        Yes ☐        No ☑

8.  Did you appeal from the judgment of conviction?        Yes ☑        No ☐

AO 243 (Rev. 01/15)                                                                                          Page 3

9.   If you did appeal, answer the following:

    (a) Name of court:   9th Circuit Court of Appeals

    (b) Docket or case number (if you know):

    (c) Result:   Denied

    (d) Date of result (if you know):

    (e) Citation to the case (if you know):

    (f) Grounds raised:

    (g) Did you file a petition for certiorari in the United States Supreme Court?   Yes ☐   No ☑

      If "Yes," answer the following:

    (1) Docket or case number (if you know):

    (2) Result:

    (3) Date of result (if you know):

    (4) Citation to the case (if you know):

    (5) Grounds raised:

10.   Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐   No ☑

11.   If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:

       (2) Docket or case number (if you know):

       (3) Date of filing (if you know):

       (4) Nature of the proceeding:

       (5) Grounds raised:

AO 243 (Rev. 01/15)

    (6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

            Yes ☐    No ☑

    (7)   Result: _____

    (8)   Date of result (if you know): _____

(b)  If you filed any second motion, petition, or application, give the same information:

    (1)   Name of court: _____

    (2)   Docket of case number (if you know): _____

    (3)   Date of filing (if you know): _____

    (4)   Nature of the proceeding: _____

    (5)   Grounds raised:

    (6)   Did you receive a hearing where evidence was given on your motion, petition, or application?

            Yes ☐    No ☑

    (7)   Result: _____

    (8)   Date of result (if you know): _____

(c)  Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)   First petition:    Yes ☐    No ☐

    (2)   Second petition:   Yes ☐    No ☐

(d)  If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12.    For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.

AO 243 (Rev. 01/15)                                                                                          Page 5

**GROUND ONE:** See attached document

(a) Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

-Tortured physically and sexually and psychologically
-Threatened with violence, death, and sexual assault
-Had large sums of money stolen from his family
-Had his property stolen
-Victim of extortion
-Civil rights violated

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐    No ☐

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐    No ☐

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?
Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
Yes ☐    No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

_____

**GROUND TWO:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See attached documents

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☒      No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

_____

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐       No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐       No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐       No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____


**GROUND THREE:** _____

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

_____

(b) **Direct Appeal of Ground Three:**

   (1)  If you appealed from the judgment of conviction, did you raise this issue?

       Yes ☐    No ☐

   (2)  If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

   (1)  Did you raise this issue in any post-conviction motion, petition, or application?

       Yes ☐    No ☐

   (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

   (3)  Did you receive a hearing on your motion, petition, or application?

       Yes ☐    No ☐

   (4)  Did you appeal from the denial of your motion, petition, or application?

       Yes ☐    No ☐

   (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

       Yes ☐    No ☐

   (6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:** _____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

   (1)   If you appealed from the judgment of conviction, did you raise this issue?

   Yes ☐    No ☐

   (2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

   (1)   Did you raise this issue in any post-conviction motion, petition, or application?

   Yes ☐    No ☐

   (2)   If you answer to Question (c)(1) is "Yes," state:

   Type of motion or petition: _____

   Name and location of the court where the motion or petition was filed:

   _____

   Docket or case number (if you know): _____

   Date of the court's decision: _____

   Result (attach a copy of the court's opinion or order, if available):

   _____

AO 243 (Rev. 01/15)                                                                                           Page 11

15.   Give the name and address, if known, of each attorney who represented you in the following stages of the
      you are challenging:

      (a)  At the preliminary hearing:

_____

      (b)  At the arraignment and plea:

_____

      (c)  At the trial:

_____

      (d)  At sentencing:

_____

      (e)  On appeal:

_____

      (f)  In any post-conviction proceeding:

_____

      (g)  On appeal from any ruling against you in a post-conviction proceeding:

_____

16.   Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court
      and at the same time?          Yes ☐     No ☐

17.   Do you have any future sentence to serve after you complete the sentence for the judgment that you are
      challenging?          Yes ☐     No ☐
      (a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

_____

      (b)  Give the date the other sentence was imposed: _____

      (c)  Give the length of the other sentence: _____

      (d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or
      sentence to be served in the future?          Yes ☐     No ☒

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain
      why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*



---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

AO 243 (Rev. 01/15)                                                                                   Page 13

Therefore, movant asks that the Court grant the following relief:

_____

or any other relief to which movant may be entitled.



                                        _____
                                        Signature of Attorney (if any)



I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion
under 28 U.S.C. § 2255 was placed in the prison mailing system on _____N/A_____.
                                                                        (month, date, year)



Executed (signed) on _____7/24/2016_____ (date)



                                        _____
                                              Yongda Harris
                                        Signature of Movant

                              25. July. 2016

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.



On this 25th July , 20 16,
before me, the undersigned Notary Public, personally
appeared Yonga Huang Harris
proved to me through satisfactory evidence of
identification, to be the person whose name is
signed on this document in my presence.

ELAINE FRANCIS
MY COMMISSION EXPIRES
NOVEMBER 20, 2020
NOTARY PUBLIC
COMMONWEALTH OF
MASSACHUSETTS

PRESS

USPS TRACKING NUMBER

PRESS FIRMLY TO SEAL

# PRIORITY
# ★ MAIL ★



9505 5126 9911 6207 0039 00

**PRIORITY®**
**MAIL**

**For Domestic**
**and International Use**



TM

UNITED STATES POSTAL SERVICE

From

Yonoda Harris
74 Georgia St #3
Boston, MA 02121

**TO**

Judge Christina A. Snyder
US District Court
312 North Spring St
Los Angeles, CA 90012

RECEIVED
CLERK US DISTRICT COURT

JUL 27 2016

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

Label 228, January 2008

**FROM:**

Yonoda Harris
74 Georgia St #3
Boston, MA 02121

**TO:**

Judge Christina A. Snyder
US District Court
312 North Spring St
Los Angeles, CA 90012



P S 0 0 0 0 1 0 0 0 0 1 4

EP14F July 2013
OD: 12.5 x 9.5

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE



**UNITED STATES**
**POSTAL SERVICE®**

U.S. POSTAGE
PAID
DORCHESTER, MA
02121
JUL 25 16
AMOUNT

**$6.45**

R2305H126746-02


1006


90012