O

JS-6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| Yongda Harris | ) | Case Nos. 2:16-cv-05606-CAS |
| | ) | 2:12-cr-01085-CAS |
| Petitioner, | ) | |
| v. | ) | **ORDER GRANTING PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255** |
| | ) | |
| | ) | |
| United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

## I. INTRODUCTION

On July 27, 2016, Petitioner Yongda Harris ("Harris") filed a petition pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. Dkt. 1 ("Petition").[1] At Harris's request, the Court appointed an attorney to represent him in this proceeding. Dkts. 3, 4. Harris's attorney filed a supplemental memorandum in support of the petition, dkt. 12 ("Supp. Pet."), and the government filed an opposition, dkt. 21 ("Opp'n"). On

---

[1] The Court uses the abbreviation Dkt. to refer to docket items in the above-captioned civil case, No. 2:16-cv-05606; CR refers to docket items in the criminal case, No. 2:12-cr-01085.

-1-

June 6, 2017, Harris filed a reply. Dkt. 28 ("Reply").

The Court has reviewed Harris's original petition, the supplemental memorandum and the evidence attached thereto, the government's opposition, and Harris's reply.

## II. BACKGROUND

### A. PRIOR PROCEEDINGS

On October 5, 2012, Harris arrived at Los Angeles International Airport on a flight originating in Japan. CR 7 at 8. An officer of the U.S. Customs and Border Protection ("CBP") singled Harris out for secondary screening because he appeared to be wearing body armor under a trench coat. CR 37, at 5, ¶ 7.

> At the secondary screening location, it was discovered that Harris was wearing a ballistic vest with two steel trauma plates, flame-retardant leggings, and knee pads. Harris had two pieces of checked luggage. His luggage was subsequently searched. The following list contains items found in the luggage: a smoke grenade; three leadfilled billy clubs; a collapsible tactical baton, two human-sized bags; a bone saw; a folding saw; a hatchet; an ice pick; a gas mask with a set of extra filters; a fully-body biohazard suit; two pairs of protective boot covers; an oven mitt; a set of cooking tongs, three black full-face ski masks; several pairs of protective eyeware; black tactical gloves; a box of black latex-free examination gloves; thin black fabric gloves, a blindfold; a white S&M style mask with zippers over the eyes and mouth; a set of hearing protection muffs; a large pair of headphones, three camping style hats; an eye patch; a false beard and adhesive; binoculars; knives, several rolls of duct tape; a pair of metal hand cuffs; a set of steel leg irons; numerous plastic flexi-cuffs in multiple sizes, batteries, a small digital video recorder; several blank video recording cassettes; a pair of wire cutters; three pairs of scissor; approximately 50 condoms; an electronic device to repel dogs.
>
> \*\*\*
>
> Harris was also in possession of a laptop computer. It was searched. Included on the Computer were Japanese anime and manga graphically depicting the rape, molestation, and sexual torture of children; and a live action movie titled "Girls in Cement." The movie contained graphic footage of the purported kidnapping, repeated gang rape, mutilation, and sexual

torture of girls over several weeks, before they are ultimately murdered and their bodies dumped in cement barrels. There were also five publications that dealt with instructing how to kill people, and an explanatory guide to hunting and trapping humans (called "Man-Trapping").

The computer also contained six published guides to defeating alarms, locks and security systems, a how-to guide for explosives and incendiary devices, a guide on revenge; survivalist literature, including how to evade detection by law enforcement, a guide on hiding things and people, and a guide on hand-to-hand fighting, among other things.

\*\*\*

Harris had information regarding Rohypnol and other date-rape drugs. Harris had several cover letters seeking employment as an English teacher at various schools in Japan. There was a Word document which included the schedule for schools in Japan (Harris worked as an English teacher at a junior high school in Japan in 2011), which included notations about when children arrived and left school. The Word documents also listed about 24 remote, vacant plots of land in Japan, notations about the proximity of those locations to different junior high and high schools, descriptions of the remoteness and isolation of each vacant lot, information about an hourly "love hotel" in the same area as the school, and information about free graveyard land for Muslims in Japan.

Id. at 5–6, ¶¶ 8, 10–11, 14.

The government determined that the smoke grenade in Harris's checked luggage was likely hazardous, and arrested Harris on charges of willfully delivering hazardous material to an air carrier in violation of 49 U.S.C. § 46502(a)(1)(B). CR 1. On October 12, 2012, Magistrate Judge Abrams ordered that Harris be detained prior to trial. CR 7.

On November 8, 2012, a grand jury returned a single-count indictment, charging that Harris "knowingly and willfully made material false, fictitious, and fraudulent statements on a customs declaration form," in violation of 18 U.S.C. § 1001. CR 18 at 1. Specifically, the indictment charged that:

1) in the portion of the customs declaration form requesting information about "countries visited on this trip prior to U.S. arrival," defendant Harris

-3-

> falsely identified China as the only country that he had visited on this trip prior to arrival in the United States; and 2) in the portion of the customs declaration form requesting information about the "total value of all goods, including commercial merchandise . . . purchased or acquired abroad" to be brought in to the United States, defendant Harris falsely stated that he had only $100 in goods purchased abroad that he intended to bring into the United States.
>
> These statements and representations were false, fictitious, and fraudulent because, as defendant Harris then well knew, the following was true: 1) defendant Harris had visited Japan for approximately 14 days on this trip prior to his arrival in the United States; and 2) defendant Harris had materially more than $100 in goods purchased abroad that he intended to bring into the United States.

CR 18. The government subsequently moved to dismiss the charges under 49 U.S.C. § 46502(a)(1)(B). CR 15.

On December 10, 2010, Harris signed a plea agreement, pursuant to which the government agreed to recommend that Harris be sentenced to five years of probation. CR. 25.

The plea agreement further provided the following description of the "Nature of the Offense:"

> Defendant understands that for defendant to be guilty of the crime charged in the indictment, that is, making false statements, in violation of Title 18, United States Code, section 1001, the following must be true: 1) defendant made a false statement in a matter within the jurisdiction of U.S. Customs and Border Protections ("CBP"); 2) defendant acted willfully; that is deliberately and with knowledge that the statement was untrue; and 3) the statement was material to CBP's activities or decisions, that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

Id. at 5. Pursuant to the plea agreement, defendant agreed to a factual basis for his guilty plea. Id. at 7-8. With respect to defendant's mental state, the factual basis section of the plea agreement provided:

> Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support a plea of guilty to the chare described in this agreement . . . [Defendant made two false statements.] The defendant's false statements were willful.

Id.

On December 17, 2012, the Court held a change of plea hearing. Dkt. 12-4. At the hearing, Harris pleaded guilty to a charge of violating 18 U.S.C. § 1001. Id. at 17. He testified that he was in good physical and mental health; that he had not been treated recently for mental illness or addiction to narcotic drugs of any kind; that he was not under the influence of any substance that would prevent him from fully understanding the charges against him or the consequences of his plea; and that he was not suffering from any mental condition that would prevent him from understanding these matters. Id. at 6–7. He further testified that he had read the plea agreement and discussed it with his attorneys, that he understood the agreement, and that it was acceptable to him. Id. at 9. He indicated that he was satisfied with the representation and advice given to him by counsel. Id. at 11.

The Court told defendant that he was charged with violating 18 U.S.C. § 1001 and asked the Government to "state for the record what the government would be required to prove beyond a reasonable doubt for the defendant to be found guilty of that charge." Id. at 10. The Government stated:

> If this case were to proceed to trial the government would prove the following beyond a reasonable doubt: . . . First, the defendant made a false statement in a matter within the jurisdiction of the United States Custom and Border Protection. And second, that defendant acted willfully, that is deliberately and with knowledge that the statement was untrue. And third, that the statement was material to Customs and Border Protections activities or decisions, that is it had a natural tendency to influence or was capable of influencing the agency's decisions or activities.

Id. at 10-11. Harris then confirmed that he understood the elements described and that the Government would be required to prove each beyond a reasonable doubt. Id. at 11.

Defendant testified that he was pleading guilty freely and voluntarily, that no one had threatened or coerced him into pleading guilty, and that no one had offered any promise or assurance in exchange for his plea. Id. at 18.

Based on its questioning of Harris and his attorneys, the Court found that Harris was fully competent to enter a plea, that he fully understood the charges against him and the potential penalties, that he understood the constitutional and statutory rights he was forfeiting, that there was a factual basis for his plea, and that he was freely and voluntarily pleading guilty. Id. at 20. Accordingly, the Court accepted the guilty plea. Id. at 20.

On May 13, 2013, the Court held a sentencing hearing, after which it issued a judgment and commitment order. CR 77.

On June 6, 2013, Harris filed a notice of appeal. CR 86. On August 12, 2015, the Ninth Circuit issued a decision affirming Harris's conviction and sentence and remanding for clarification of one of the terms of his probation. CR 135. On October 16, 2015, the Court issued a second amended judgment clarifying the relevant probation term. CR 148.

## B. HARRIS'S SUBMISSION HERE

Notwithstanding his guilty plea, Harris contends that he is innocent. Harris contends that he did not knowingly lie on his customs form, that he understood his customs form answers to be true, and that he never understood the elements of the charge against him.

Harris contends that he only pleaded guilty because his defense attorneys deceived him and threatened to abandon him if he did not sign the plea agreement. Dkt. 28, Yongda Harris Declaration ("Harris Decl.") ¶¶ 9, 10, 12. According to Harris:

> The inflammatory media reports and comments in court about me were very traumatic for me. I knew I was not a terrorist or child molester or any of the other terrible things that were being said about me, and I was totally humiliated by having people believe these things. Attorneys Gunsberg and Rosenstein actively supported the media demonization of me and did

> nothing on the record or off the record to fight the false allegations made against me. They actually believed it themselves and never disclosed this to me until they forced me into a plea, threatening to literally walk out the prison door if I did not sign the plea agreement and abandon me in prison . . . .

Id. ¶ 10.

With respect to his customs form, Harris claims to have omitted mention of Japan because he "understood that he [was] required to state the country from where he came from on this 'Flight Trip', and not which other countries he visited while he was out of [the United States]." Petition at 8. According to Harris, he freely disclosed that he had previously traveled to China *and* Japan while being interrogated by CBP and that the only reason he had not included Japan on his customs form was that he misunderstood the question. Id. at 9. Harris further avers that "most of the goods" in his bags were things he purchased in the United States before he left the country rather than goods purchased abroad. Id. Thus, according to Harris, he estimated the value of the goods he purchased abroad to be "around $100" – the rest of the things in his bag, according to Harris, were things he took abroad and was bringing back home. Id. Harris claims to have explained the foregoing to his trial counsel, but that his trial counsel ignored him.

As discussed below, Harris contends that he did not understand the charge against him because:

> I was never advised . . . [that the government would have to prove] I knew at the time I filled out the customs form that I was doing something unlawful. If I had known about that element, I would not have entered my guilty plea. I did not know that I was doing anything illegal when I filled out my customs form.

Harris Decl. ¶ 2. Although Harris's attorneys claim to have discussed the elements of 18 U.S.C. § 1001 with Harris, Harris claims that:

-7-

> [t]hey never discussed the elements, and I did not know what the government would be required to prove if I had gone to trial. If I had understood the elements of the crime, I would not have entered my guilty plea. Now that I understand the elements, I know I did not commit the crime because I did not knowingly or intentionally make any false statement on my customs form.

Id. ¶ 3.

### III. LEGAL STANDARD

"A prisoner in custody" pursuant to a federal sentence may obtain relief from that sentence by showing "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a).[2] The Court is required to hold a hearing on a § 2255 petition "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). Under this standard, a district court may dismiss a § 2255 petition without a hearing if the petition fails as a matter of law, or if the allegations are wholly conclusory, palpably incredible, or patently frivolous. United States v. Leonti, 326 F.3d 1111, 1116 (9th Cir. 2003).

### IV. DISCUSSION

"In order to satisfy the due process requirements of the Fifth Amendment, a defendant's guilty plea must be voluntary and intelligent." United States v. Graibe, 946 F.2d 1428, 1432 (9th Cir. 1991). A defendant's plea is not voluntary if the defendant is mentally incompetent at the time of the plea, Godinez v. Moran, 509 U.S. 389, 396–97 (1993), or if the plea is the product of threat, coercion, or false promises. Machibroda v. United States, 368 U.S. 487, 493 (1962). A defendant's plea is not intelligent unless "the

---

[2] Although Harris is not in the government's physical custody, he is currently subject to probation. That satisfies § 2255's custody requirement. United States v. Span, 75 F.3d 1383, 1386 n.5 (9th Cir. 1996).

1  defendant [is] informed of the critical elements of the offense." United States v.
2  Villalobos, 333 F.3d 1070, 1075 (9th Cir. 2003). A plea that is not voluntary or
3  intelligent is subject to collateral attack. Machibroda, 368 U.S. at 493.

4  Harris argues, inter alia, his plea was not intelligent because he was not informed
5  of a critical element of the offense, namely, that the Government would be required to
6  prove beyond a reasonable doubt that he knew it would be unlawful to make false
7  statements on his customs declaration form.

### A. The Elements of 18 U.S.C. § 1001

18 U.S.C. § 1001 provides that it shall be unlawful to "knowingly and willfully" make a materially false statement to any agency of the U.S. government. The statute does not define the term "willfully."

In 1998, the Supreme Court observed "[a]s a general matter, when used in the criminal context . . . in order to establish a 'willful' violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." Bryan v. United States, 524 U.S. 184, 191 (1998) (quotation marks and citations omitted). Asked to evaluate the meaning of the term "willfully" in a sentencing statute, 18 U.S.C. § 924(a)(1)(D), the Court held that, "the willfulness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no excuse; knowledge that the conduct is unlawful is all that is required." Id. at 196.

Although Bryan did not expressly address 18 U.S.C. § 1001, section 1001's use of the term "willfully" in the criminal context has led many circuits to conclude that section 1001 requires proof that a defendant knew it was unlawful to make false statements. See United States v. Whab, 355 F.3d 155, 160 (2d Cir. 2004) (requiring knowledge that the conduct was unlawful); United States v. Starnes, 583 F.3d 196, 211 (3d Cir. 2009) (same); United States v. Clay, 832 F.3d 1259, 1308 (11th Cir. 2016) (same); United States v. Moore, 612 F.3d 698, 703 (D.C. Cir. 2010) ("in a case where the issue is raised, the Supreme Court's precedents arguably require district courts in § 1001 cases to give a

willfulness instruction that requires proof that the defendant knew his conduct was a crime"). However, not all Circuits require proof that a defendant knew their false statements to be unlawful. See e.g. United States v. Daughtry, 48 F.3d 829, 831 (4th Cir.), vacated on other grounds, 516 U.S. 984 (1995); United States v. Hildebrandt, 961 F.2d 116, 118 (8th Cir. 1992).

Prior to Bryan, the law in the Ninth Circuit was clear. In the context of 18 U.S.C. § 1001, willfully meant "deliberately and with knowledge." United States v. Carrier, 654 F.2d 559, 561 (9th Cir. 1981). "It [was] not necessary that the government prove that the [defendant] in fact had an evil intent." Id. After Bryan was decided, few cases in this circuit have squarely addressed whether section 1001 requires proof that a false statement would be unlawful. Some courts have continued to rely upon Carrier and its progeny, notwithstanding Bryan, and found no requirement that the defendant knew their conduct to be unlawful. See e.g. United States v. O'Donnell, Case No 08-cr-00872-SJO, 2009 WL 9041123, *6-7 (C.D. Cal. June 8, 2009) (rejected a "heightened mens rea requirement" notwithstanding Bryan); United States v. Cooper, Case No. 13-cr-00706-RGK, 2014 WL 12629690, at *3 (C.D. Cal. June 3, 2014) (citing Carrier while discussing the elements of § 1001). However, subsequent cases, discussed below, appear to have changed the law in this circuit.

In 2013, the Ninth Circuit held that 18 U.S.C. § 1035 (prohibiting "knowingly and willfully" making false statements about healthcare benefits) did not require proof that the defendant knew their false statements would be unlawful.[3] United States v. Ajoku, 718 F.3d 882, 890 (9th Cir. 2013) ("Ajoku I"). The Supreme Court granted Ajoku's petition for certiorari, vacated the Ajoku I judgment, and remanded the case to the Ninth Circuit "in light of the confession of error by the Solicitor General." Ajoku v. United

---

[3] In so holding, the court observed that, "18 U.S.C. § 1035 is a false statement crime substantively identical to 18 U.S.C. § 1001," but with different jurisdictional contours. Id. at 889. Thus, the Ninth Circuit's reasoning drew primarily from the Court's § 1001 cases. Id.

States, 134 S. Ct. 1872 (2014). Evidently, after <u>Ajoku I</u>, the Government reversed its position and the Government now concedes that, in light of <u>Bryan</u>, 18 U.S.C. § 1035 requires knowledge that one's conduct would be unlawful.[4] On remand, in an unpublished decision, the Ninth Circuit held that "in order to establish a willful violation of a statute, the Government must prove that the defendant acted with knowledge that his conduct was unlawful." <u>United States v. Ajoku</u>, 584 F. App'x 824 (9th Cir. 2014) (citing <u>Bryan</u>, 524 U.S. at 191-92) ("<u>Ajoku II</u>").

---

[4] Both section 1001 and section 1035 use identical language. Section 1001 provides, in pertinent part:

> whoever . . . knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false . . . statement or entry;
> shall be fined under this title, imprisoned not more than 5 years [or sentenced to not more than 8 years under certain circumstances] . . . .

18 U.S.C. § 1001(a). Section 1035 similarly provides:

> [w]hoever . . . knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or
> (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false . . . statement or entry . . .
> shall be fined . . . or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a). Thus, consistent with the position taken in the <u>Ajoku</u> litigation, the Government concedes here that § 1001 requires proof beyond a reasonable doubt that the accused knew their false statements would be unlawful.

In light of Ajoku II, the Ninth Circuit has modified its model jury instruction for 18 U.S.C. § 1001 to require proof that "the defendant acted willfully; that is, the defendant acted deliberately and with knowledge both that the statement was untrue and that his or her conduct was unlawful." 9th Circuit Model Criminal Jury Instruction 8.73 (updated 12/2016). The Government similarly concedes that a conviction for violation of 18 U.S.C. § 1001 requires proof that the defendant knew his or her conduct to be unlawful. Since Ajoku II, courts in this circuit have assumed that the Ajoku litigation altered the elements of section 1001. See United States v. En Lee, Case No. 15-cr-00541-SI, 2016 WL 5076202, *5 (N.D. Cal. Sept. 20, 2016) (using the new model instruction); United States v. Alguire et al., Case No. 13-cr-00706-RGK, Dkt. 68 at 28 (instructing the jury that willfully means "with knowledge that the statement was untrue, and with knowledge that his conduct was unlawful"). Although the Court can discern no *published* 9th Circuit opinion squarely on-point, the Court joins other district courts in this Circuit that have concluded Carrier no longer remains good law in light of the Supreme Court's holdings in Bryan and decision to vacate the judgment in Ajoku I. No party here argues to the contrary.[5] Thus, in order to violate section 1001, a person must act with knowledge that their conduct is unlawful.

---

[5] Since Ajoku II, two unpublished Ninth Circuit opinions have concluded that Ajoku's holding only disturbed 18 U.S.C. § 1035's elements and not 18 U.S.C. § 1001's elements. See United States v. Mazzeo, 592 F. App'x 559, 562 (9th Cir. 2015) (stating that whether § 1001's willfulness element should be altered "is a question for another day"); United States v. Eglash, 640 F. App'x 644, 646 (9th Cir. 2016) (citing Mazzeo, but denying the jury instruction appeal because any error could not reasonably have affected the outcome). However, neither controls the Court's decision here. Not only are both decisions unpublished, both were decisions about the adequacy of the lower court's jury instructions. Whereas an error in jury instructions is subject to plain-error review in light of complete evidentiary record from trial, the Court here must evaluate the validity of a plea. In light of Ajoku, Bryan, the Government's concession, and district courts' subsequent adoption of the model Ninth Circuit instruction 8.73, the elements of section 1001 appear to now be well-settled in this circuit.

## B. Harris Was Not Informed of the Elements of the Offense

In order for defendant's plea to have been intelligent and voluntary, he must have been informed of the essential elements of the offense. Villalobos, 333 F.3d at 1075. In support of his petition, Harris has submitted a declaration stating unambiguously:

> I was never advised by my attorneys prior to entering my guilty plea that an element the government would have to prove for me to be guilty of 18 U.S.C. § 1001 is that I knew at the time I filled out the customs form that I was doing something unlawful . . . . *I did not know that I was doing anything illegal when I filled out my customs form.*

Dkt. 28, Harris Decl. ¶ 2 (emphasis added). Two of Harris's former attorneys have also submitted declarations here.[6] Both attorneys claim to have advised Harris about the elements of the offense based upon then-existing caselaw and the Ninth Circuit model jury instructions at the time. See Dkt. 21-2 ("Rosenstein Decl.") ¶ 10 ("Both Mr. Gunsberg and I spoke with Mr. Harris regarding the government's plea offer . . . . Mr. Gunsberg and I discussed the elements of the offense with Mr. Harris, using the statute, applicable case law, *the then-current Ninth Circuit model jury instructions*, and the advisory USSG Sentencing Guidelines" (emphasis added)); Dkt. 21-1 ("Gunsberg Decl.") ¶ 10 (same). Neither attorney claims to have advised defendant that the Government would be required to prove Harris knew his false statements were unlawful.

---

[6] Prior to the Court's May 13, 2013 judgment and commitment order, Harris was represented at different times by six attorneys. At Harris's initial appearance on October 12, 2012, Harris was represented by Steven Seiden. CR 3. On October 18, 2012, Jerod Gunsberg and Michael Rosensetein replaced Seiden as Harris's counsel. CR 11-12. Gunsberg and Rosenstein represented Harris through his change of plea, CR 28, and ended their representation on March 21, 2013, CR 52. William Cintolo appeared pro hac vice on behalf of Harris during sentencing, with Gregory Humphries designated as local counsel. CR 56. On May 3, 2013, Matthew Lombard replaced Humphries and Cintolo. CR 67-68.

The parties appear to agree that only Rosenstein and Gunsberg were in a position to disucss the elements of section 1001 with Harris prior to his pleading guilty.

Nor did the Ninth Circuit model jury instructions at the time state that the Government was required to prove knowledge that one's false statements are unlawful. See 9th Circuit Model Criminal Jury Instruction 8.73 (2010 ed.). Defendant's plea agreement did not state that knowledge one's false statements are unlawful is element of the offense, nor did the factual basis passage of the plea agreement state that Harris knew his false statements were unlawful at the time he made them. CR 25. Lastly, neither the Court, nor the Government, nor Harris, nor Harris's attorneys stated during Harris's plea colloquy that the Government would be required to prove beyond a reasonable doubt that Harris knew his false statements were unlawful. Dkt. 12-4.

Thus, in light of the foregoing, neither Harris, nor his counsel, nor the Government, nor the Court correctly understood the essential elements of the crime with which Harris was charged. At bottom, no one informed Harris of an essential element of the charge against him; thus, Harris has never admitted to an essential element of the charge for which he was convicted and sentenced.

### C. The Error Requires Reversal of Harris's Conviction

The Government argues that the Court should "examine[] the evidence in the record that may show the defendant's requisite mental state," Opp'n at 8 (citing United States v. Eglash, 640 Fed. Appx. 644, 646 (9th Cir. 2016)), and that "there is a 'reasonable inference from the record' that it was foreseeable that petitioner knew that making a false statement was illegal," id. (quoting United States v. Betancourt, 677 Fed. Appx. 406, 407 (9th Cir. 2017)). Thus, rather than dispute the elements of § 1001 or argue that Harris was informed of the essential elements of the charge he faced before pleading guilty, the Government asserts that the Court should draw inferences from the record and evaluate whether, when Harris completed his customs form, Harris in fact had the requisite mental state. By arguing that the record supports Harris's conviction, the Government relies upon a flawed understanding of the standard of review.

In support of its argument about the review of the record, the Government cites Eglash and Betancourt. Neither case is persuasive or binding here. In Eglash, a jury

-14-

convicted the defendant after a full trial. 640 Fed. Appx. at 645. On appeal, the defendant argued that the conviction should be overturned because the court had not properly instructed the jury regarding the requisite mental state. Id. at 646. Relying upon United States v. Marcus, 560 U.S. 258, 264 (2010) (a case about prejudice from instructional errors), the Ninth Circuit examined the evidence and affirmed the denial of the defendant's habeas petition because there had been a "mass of evidence supporting the false statement conviction" and no reasonable probability of prejudice. 640 Fed. Appx. at 646. In Betancourt, the court was asked to review whether evidence considered during sentencing was sufficiently reliable. 677 Fed. Appx. at 407. The court affirmed the sentence after concluding that the lower court had not made any finding that was not supported by evidence with "some minimal indicium of reliability." Id. (quoting United States v. Vanderwerfhorst, 576 F.3d 929, 936 (9th Cir. 2009)).

Based upon its argument, it is unclear which standard the Government contends should govern the Court's review here – a "reasonable probability" error affected the outcome, Eglash, 640 Fed. Appx. at 646, is different from "some minimal indicium of reliability," Betancourt, 677 Fed. Appx. at 407. Not only did Eglash and Betancourt arise under very different circumstances than one another – one case evaluated a conviction after trial and the other evaluated whether it was proper to consider something during sentencing – both are easily distinguished from this case. Here there has not been a trial and Harris does not challenge his sentence. Harris contends that his plea was unknowing and that he is innocent. The Government never put on a witness, Harris conducted no cross-examination, and no trier of fact weighed competing inferences. The Court cannot discern any authority for the Government's implicit contention that an unknowing plea should be reviewed under the same standard as instructional error after a full trial or the standard used for evaluating sentencing considerations. The different context here is governed by a different standard of review.

A petition pursuant to 28 U.S.C. § 2255 may challenge the validity of a guilty plea that was not voluntary and knowing. United States v. Bousley, 523 U.S. 614, 618 (1998).

Where a habeas petitioner proves that "neither he, nor his counsel, nor the court correctly understood the essential elements of the crime with which he was charged [at the time of his plea,] . . . petitioner's plea . . . [is] *invalid*." Id. at 618-19 (emphasis added). It is immaterial that "the prosecutor had overwhelming evidence of guilt available," that defense counsel was competent, and that defense counsel wisely advised their client to accept a plea agreement. Henderson v. Morgan, 426 U.S. 637, 644-45 (1976). A guilty plea cannot be "voluntary in the constitutional sense" unless the defendant "received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." Id. at 645 (quotation marks omitted). Ordinarily, "if a defendant does not receive notice of a charge through a charging document or through some other means, *the conviction must be reversed*." Gautt v. Lewis, 489 F.3d 993, 1014 (9th Cir. 2007) (citing Sheppard v. Rees, 909 F.2d 1234, 1237 (9th Cir. 1989) and Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986)) (emphasis added). Thus, it is inappropriate for the Court to closely scrutinize the record and decide whether defendant actually formed the requisite intent; the question presented here is whether he was advised of the elements of the offense. See Sheppard v. Rees, 909 F.2d 1234, 1237 (9th Cir. 1989) ("it is incorrect to surmise, as did the district court, that the error was harmless because there was an 'abundance of evidence' to support a finding of felony-murder. The defendant had no opportunity to present his own evidence on felony-murder to refute that of the prosecution."); Cunningham v. Wood, 69 F.3d 543 (9th Cir. 1995) (unpublished disposition) (rejecting trial court's finding that defendant formed the requisite intent and remanding for further proceedings where defendant claimed to have pleaded guilty without being advised of the elements).

The Government argues that Harris knew his statements on the customs declaration form were both false and unlawful at the time he made them. However, defendant's *actual* mental state at the time he filled out his customs form is not appropriately determined here. The question here is whether Harris's guilty plea was valid. Nothing in the record here suggests that Harris was aware of the essential elements of his offense at

the time of his plea. Therefore, Harris cannot be said to have intelligently waived his right to a jury determination of his mental state if he never knew what the Government would be required to prove.

The Government's assertion that "[e]ven assuming that petitioner did not know that it was illegal to make the false statements at the time he made those statements, petitioner has failed to establish prejudice arising from his unawareness of this element," Opp'n at 10-11, belies a fundamental misunderstanding of the crime and the standard of review. If one assumes that Harris "did not know it was illegal to make the false statements at the time he made those statements," as the Government proposes, then Harris is *actually innocent* of the charge to which he pleaded guilty and his conviction is predicated on a denial of due process. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." Chapman v. California, 386 U.S. 18, 24 (1967). Although, the Ninth Circuit has expressed *some* uncertainty whether a "right to notice" claim should require "*automatic* reversal" or harmless error review, Gautt at 1015 (emphasis added) (indicating that it would likely require automatic reversal), the Court cannot discern any Ninth Circuit case upholding a plea where the defendant pleaded guilty without being aware of an essential element of the crime and where the defendant contends he would not have pleaded guilty if he understood the essential elements. Due process requires that Harris's guilt either be determined by a jury or the subject of a knowing guilty plea. Thus, the Court declines to engage is speculation about Harris's state of mind on the day he completed his customs form in the absence of evidence and his plea must be set aside.

Even if the Court sought to reweigh the inferences that could be drawn from the minimal plea colloquy here, the Court could not conclude that Harris formed the requisite intent, rendering any error harmless, beyond a reasonable doubt. He certainly never admitted to having the requisite intent at the time of the crime. In these proceedings, Harris expressly denies having formed the requisite intent. There is nothing in the record about the circumstances under which Harris completed the form, whether anyone gave

instructions about the customs form, how recently Harris had been in China and/or Japan, how well Harris reads, whether Harris filled out the form quickly or slowly, whether Harris was evasive during CBP questioning, whether Harris readily turned over the form to CBP, whether Harris had completed it in the past, whether Harris looked up the form in advance, whether Harris read the form in its entirety, or even whether Harris signed the form. Not even the form itself, in which Harris allegedly made false statements, has been presented to any trier of fact or the Court. Instead, the Government has offered one page of a blank "Sample" form here.[7] See Opp'n, Rebecca Shults Declaration Ex. A. The customs form does not state that it is a crime to make false statements. The only factual basis for Harris's plea was his own plea colloquy, during which Harris did not admit to knowing his statements were unlawful at the time he made them.

As set forth above, the fact that no one informed Harris of the essential elements of his charged offense was a violation of due process, rendering his plea invalid. The Court's failure to sufficiently describe the requisite mental state to Harris was also a violation of Rule 11's plea colloquy requirements. See United States v. Dominguez Benitez, 542 U.S. 74, 83 (2000) (discussing the standard of review for a violation of Rule 11 and noting the distinction between a Rule 11 violation and a violation of due process). Rule 11 requires that the Court inform the defendant of the nature of the charge against him and determine that the defendant understands the nature of the charge to which he is pleading. Fed. R. Crim. P. 11(b)(1)(F). It is undisputed that the Court failed to sufficiently do so here because no one involved fully apprehended the elements of the charge against Harris and discussed them. Because there is no indication that Harris had a deeper understanding of the charges he faced than his attorneys, the Government, and the Court, the violation of Rule 11 was not harmless. See United States v. Seesing, 234 F.3d 456, 462 (9th Cir. 2000) (a Rule 11 error regarding an element of the offense is not

---

[7] The bottom of the single page offered here states "Read the instructions on the back of this form." The Government has not offered the second page.

harmless unless the defendant's responses during the colloquy "clearly indicate" his awareness of the omitted element or an admission to a different element satisfies the omitted element as a matter of law). Even assuming that Harris was aware of the elements of § 1001, by failing to inquire into that element, the Court failed to establish a factual basis for the plea. Any plea taken under the circumstances must be set aside. See Salas v. United States, 529 F.2d 1276, 1277 (9th Cir. 1975) ("A factual basis for the plea was not developed as required by Rule 11. Noncompliance by the district court with the Rule requires that the defendant's guilty plea be set aside and his case remanded for another hearing at which he may plead anew."). Thus, the violations of Rule 11 alone require reversal of Harris's conviction.

In light of the foregoing, Harris's guilty plea must be set aside as invalid. The Court's May 13, 2013 judgment and commitment order, CR 77, is hereby vacated.

### V. CONCLUSION

For the foregoing reasons, Harris's petition (Dkt. 1) is **GRANTED**.

The Court sets a status conference for **September 18, 2017, at 1:30 p.m.** Defendant is ordered to be present on September 18, 2017, at 1:30 p.m., unless advised otherwise by his attorney of record.

**IT IS SO ORDERED.**

DATED: August 9, 2017

*Christina A. Snyder*

Christina A. Snyder
United States District Judge